FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ APR 14 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VICTOR JOHNSON,

                       Petitioner,           11 CV 5467 (SJ)

- against -                           MEMORANDUM AND
                                       ORDER

PHILIP HEATH, Superintendent,
Sing Sing Correctional Facility,

                       Respondent.
-------------------------------------------------------------X

JOHNSON, Senior District Judge:

        After a full trial, Victor Johnson ("Petitioner") was convicted of course sexual conduct against a child in the first degree ("count one")[1] and endangering the welfare of a child ("count two")[2]. He was sentenced to the maximum allowable twenty-five years imprisonment for count one and one year for count two, to run concurrently. (Docket Number ("Dkt. No.") 6-11 at 68). Petitioner now seeks a writ of habeas corpus, under 28 U.S.C. § 2254 ("§ 2254"), challenging the conviction and sentence imposed under Nassau County Indictment No. 2447N-07 on twelve separate grounds. (Dkt. No. 6-12 at Exhibit A-B-1).

        Based on this Court's analysis of Petitioner's claims, the submissions of the parties, and for the reasons set forth below the petition is hereby DENIED.

---

[1] NY Penal Law § 130.5(1)(a)
[2] NY Penal Law § 260.10(1)

## I.    The Trial

The relevant facts are as follows.  During the trial, Petitioner moved to exclude certain statements made by the victim's father to Petitioner during a police-controlled conversation.  (T74-81).  "[M]e knowing, you know, your history" and "none of my [friends] like you and you know that...They all knew about Vic long before I knew about Vic."  (T76 -79).  Petitioner argued that these statements impermissibly alluded to the existence of prior uncharged sexual misconduct by Petitioner.  (T76-79).  The court admitted the statements into evidence over Petitioner's objections.  (T76-79).

Later, Petitioner objected to the victim's grandmother testifying that the police sent "mugshots" of Petitioner to the victim.  (T639).  The term "mugshots," according to Petitioner, impermissibly implied that Petitioner was a criminal.  (T669-70).  The court denied Petitioner's request for a mistrial, choosing instead to strike the reference to mug shots from the record.  (T670, 683-85).

At another point, the victim's father testified that he "learned that [Petitioner] had touched [his] son on numerous occasions and that that wasn't the first time that he did it."  (T732).  Petitioner again moved for mistrial arguing that the statement could only be interpreted as meaning Petitioner sexually touched another person in the past.  (T732).  The court denied Petitioner's motion for mistrial but admonished the Government not to let it happen again.  (T733).

Later, Petitioner moved to question the victim and his father about pictures

2

of the victim's father performing sex acts with other men. (T844). Petitioner suggested such questioning was relevant to showing the victim was making up the allegations of sexual abuse to hurt Petitioner as retaliation. (T844-48). The court barred such questioning finding it irrelevant. (T847).

Petitioner later moved to preclude admission of portions of the victim's medical records. (T869). In the records was the reason for the victim's visit to the doctor. It stated that the then-ten year old child needed an examination following the "disclosure of a penile [to] anal penetration over the course of three years by father's friend (boyfriend/lover)." (Dkt. No. 6-12 Exhibit A). Petitioner argued that the doctor could not testify as to who was responsible for the anal penetration or how long it continued. (T873-74). The court admitted the medical records in full without a prior review of their contents. (T874).

Petitioner also objected to the admission of the alleged hearsay testimony of Detective Sheinberg. (T1162). Detective Sheinberg testified as to statements made by the victim about what Petitioner did to him. (T1162-163). The court overruled Petitioner's objection holding the statements were "recent outcr[ies]" and therefore not hearsay. (T1162-163).

Later, Dr. Sallie Carter, a pediatrician, testified about her diagnosis of the victim. (T1507-1529). Dr. Carter testified that the victim suffered from Post-Traumatic Stress Syndrome ("PTSD"). Dr. Carter claimed to have a degree in psychology, divinity, and medicine. (T1507). She further testified that she diagnoses

3

mental health conditions of children in her professional capacity. (T1507-509). Petitioner objected numerous times on the grounds that Dr. Carter was not qualified as an expert in PTSD since there was no Frye hearing. (T1520-1530). The court overruled Petitioner's objections and admitted Dr. Carter's expert testimony. (T1520-1530).

Following the victim's testimony, Petitioner moved to have the case dismissed as a matter of law on the ground that the Government's case was legally insufficient to establish that Petitioner sexually abused the victim at least twice during the time allegation. (T1803). The court denied that motion.

Just before closing arguments began, Juror #9 informed the court that Juror #3 was involved in a child abuse allegation. (T1864). According to Juror #9, Juror #3 also told other jurors that she felt sorry for Petitioner when she saw him crying and that she didn't "believe what [the victim] said." (T1865). The Government argued that if Juror #3 was the target of an abuse allegation, she was unqualified for jury service. (T1866).

The court questioned Juror #3 about the allegations. (T1868-869). She denied having been accused of sexual abuse. (T1868). Instead, she claimed that she was accused of verbally abusing a student. (T1868). She further claimed that she never expressed an opinion about Petitioner or the victim to another juror. (T1869). Petitioner argued that this exchange did not provide a basis for discharging the juror. (T1870-871). The court, believing that the juror should have disclosed the abuse

4

accusation, decided to dismiss the juror over the objection of Petitioner. (T1871).

Petitioner tried to object again but was cut off by the trial judge who said "we have

four alternates that are pristine. Why take a chance on something?" (T1871).

Petitioner responded that there was no way to give credibility to one juror over the

other. Petitioner further argued that Juror #3 did not lie on any questionnaire and

was therefore still qualified to be a juror. (T1872). The court discharged the juror

anyway. (T1872). The jury convicted Petitioner on both counts. (T2033).


II.     Post-Conviction Proceedings

        Following his conviction, Petitioner filed a timely appeal to the New York

State Supreme Court Appellate Division, Second Department (the "Second

Department"). He raised twelve mostly non-constitutional claims substantially

similar to the constitutionally colored claims upon which he now seeks habeas relief.

(Dkt. No. 6-12).

        On direct appeal, he argued that the trial court erred by: (1) disqualifying

Juror #3; (2) admitting testimony related to allegations of prior sexual misconduct;

(3) permitting Dr. Carter to testify as to a PTSD diagnosis without a Frye hearing;

(4) failing to redact the victim's medical records; (5) entering a verdict where the

People failed to establish all of the elements of the crime; (6) entering a verdict that

was against the weight of the evidence; (7) entering a verdict where the indictment

charged a count made duplicitous by an overbroad time allegation; (8) preventing the

defendant from cross-examining the victim's father about pictures that could have shed light on the victim's motives; (9) admitting hearsay that prejudiced the defendant's case; (10) admitting a police-controlled conversation between Petitioner and the victim's father; (11) allowing the preceding errors to become harmful in the aggregate; and (12) sentencing Petitioner to an excessive prison term. (Dkt. No. 6-12).

The Second Department affirmed the trial court in a two-page opinion. See People v. Johnson, 83 A.D.3d 1094, 922 N.Y.S.2d 455, (2nd Dep't 2011). The Second Department held that Petitioner's first and seventh claims were not preserved for review since the Petitioner did not properly raise those issues at a time when the trial court could have provided a remedy. Johnson, 83 A.D.3d at 1095, 922 N.Y.S.2d at 457 (internal citations omitted). The court rejected Petitioner's sixth and twelfth claims on the merits. Id. While acknowledging that Petitioner's tenth claim was correct that the trial court should have redacted the police-controlled conversation, the court found the error harmless in light of the "overwhelming evidence of the defendant's guilt." Id. The court dismissed the remainder of Petitioner's claims as "without merit." Id.

Petitioner then sought review from the New York Court of Appeals. (Dkt. No. 6-15). In his application for leave to appeal, Petitioner asserted all but two of the same claims from his direct appeal, dropping claim six (that the verdict was against the weight of the evidence) and claim ten (that the police-controlled

conversations between Petitioner and the victim's father should have been redacted).

Id. The Court of Appeals denied the application without opinion on August 5, 2011. See People v. Johnson, 17 N.Y.3d 818, 954 N.E.2d 97 (2011) (Order Denying Leave).

> II.     The Instant Petition

Petitioner now seeks federal habeas relief advancing all twelve claims that he raised in his direct appeal. (See Dkt. No. 1). However, for the first time, Petitioner now couches each of the twelve claims in terms of a constitutional deprivation. Although it is often unclear which constitutional right he is asserting, Defendant now appears to allege as follows:

> 1. The trial court violated his Sixth Amendment right to a fair and impartial trial by disqualifying Juror #3 without a more thorough inquiry into the juror's fitness
>
> 2. The trial court violated his Due Process rights by admitting testimony that related to allegations of prior uncharged sexual misconduct
>
> 3. The trial court violated his Due Process rights by allowing a doctor to testify to a PTSD diagnosis without a Frye hearing.
>
> 4. The trial court violated his Sixth Amendment right to a fair trial by failing to redact prejudicial allegations from the victim's medical

records

5.  The trial court violated his Sixth Amendment right to a fair and impartial trial by imposing a conviction where the People had not established the elements of count one

6.  The trial court violated his Sixth Amendment right to a fair trial and his Fourteenth Amendment Due Process rights by imposing a conviction where the verdict was against the weight of the evidence

7.  The trial court violated his Fourteenth Amendment Equal Protection rights by imposing a conviction upon an indictment containing a duplicitous count

8.  The trial court violated his Fourteenth Amendment Equal Protection rights by barring cross-examination regarding pictures of the victim's father performing sex acts

9.  The trial court violated his Sixth Amendment right to a fair trial and Fourteenth Amendment Due Process rights by admitting impermissible hearsay evidence

10. The trial court violated his Sixth Amendment right to a fair trial, Fourteenth Amendment Due Process rights, and an unnamed Fifth Amendment right by refusing to redact prejudicial portions of police-controlled conversations with the victim's father

11. The trial court violated his Sixth Amendment right to a fair trial and

Fourteenth Amendment Due Process rights by allowing the

cumulative effect of the ten prior claims for relief to become harmful

in the aggregate

12. The trial court violated his Fourteenth Amendment Due Process and

Equal Protection rights by imposing an excessive sentence

III.    Discussion

A.    Procedural Issues

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

codified a series of procedural requirements for the filing of an application for a writ

of habeas corpus by a person in custody pursuant to a state court judgment. Among

those procedural requirements is: (1) the petition must be timely; (2) the petitioner

must have exhausted available state corrective processes; and (3) the claims within

the petition cannot be procedurally barred on independent and adequate state law

grounds. See 28 U.S.C. §§ 2244(d)(1)(A) & 2254(b)(1)(B); see also Coleman v.

Thompson, 501 U.S. 722, 729 (1991).


1.    Timeliness

The first inquiry is whether the petition is timely under AEDPA's one-year

statute of limitations. In most cases, the limitations period runs from "the date on

which judgment became final by the conclusion of direct review or the expiration of

9

the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A conviction becomes "final" when the United States Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522, 527 (2003).

For New York prisoners, generally, the conviction is final 90 days after leave to appeal to the New York Court of Appeals is denied, because defendants have 90 days to seek certiorari review before the United States Supreme Court. See McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003); see also Sup. Ct. R. 13(1).

In the instant case, since Petitioner did not seek a writ of certiorari in the United States Supreme Court, the conviction became final on November 7, 2011, 90 days after the New York Court of Appeals denied leave to appeal. Accordingly, the statute of limitations would run until November 7, 2012 – one year after the expiration of time for seeking review from the United States Supreme Court. Petitioner filed the instant petition on October 31, 2011, well before the limitations period had expired. Therefore, his petition is timely.

### 2. Exhaustion

The second inquiry is whether the petitioner exhausted each claim by seeking remedies that may be available in the courts of the state in which he was convicted. 28 U.S.C. 2254(b)(1)(B). A petitioner must "fairly present" both the factual and legal

10

premises of his federal claims to the highest state court. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>see</u> <u>also</u> <u>Jones v. Keane</u>, 329 F.3d 290, 294-295 (2d Cir. 2003). While "a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement," he must tender his claim "in terms that are likely to alert the state courts to the claim's federal nature." <u>Jackson v. Conway</u>, 763 F.3d 115, 133 (2d Cir. 2014). It is enough if the petitioner cites to federal cases in his direct appeal brief, <u>see</u> <u>Dye v. Hofbauer</u>, 546 U.S. 1, 4 (2005), or relies on state cases that apply a constitutional analysis. <u>See</u> <u>Daye v. Attorney General</u>, 696 F.2d 186, 194 (1982) (Superseded by statute on unrelated grounds). Finally, a petitioner waives all claims from the original appellate brief to the extent that he does not include such claims in his application for leave to appeal to the New York Court of Appeals. <u>See</u> <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991).

This Court will address each claim in turn.

In his direct appeal, Petitioner presented his first claim, regarding the dismissal of a juror, in terms that were likely to alert that court to the claim's federal nature. "This country's judicial system does not tolerate jury deliberations where such immediate risks to *Due Process of Law* are so glaring." (Dkt. No. 6-12) (emphasis added). Petitioner also raised this claim in constitutional terms in his application for appeal to the Court of Appeals. "[The Court] discharged her over defendant's opposition, thus adversely *implicating defendant's constitutional right to a trial by a particular jury chosen according to law, in whose selection the*

11

defendant has had a voice." (Dkt. No. 6-15) (emphasis added) (citing U.S. CONST. §1, sec.2 & People v. Ivery, 96 AD2d 712 (4th Dep't 1983) (State case conducting constitutional analysis). Therefore, claim one was exhausted upon denial of the application to appeal.

Petitioner presented claims two, three, four, eight, nine, and ten – the evidentiary claims – in his direct appeal, (Dkt. No. 6-12), and then again, with the exception of claim ten, to the Court of Appeals. (Dkt. No. 6-15). But neither evidentiary claim was presented to either appellate court in terms that were likely to alert those courts to the claims' federal nature. The sum of Petitioner's evidentiary claims is that the trial court "got it wrong." However, a state court's evidentiary rulings, even if erroneous under state law, do not generally present constitutional issues cognizable under federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 68 (1991) (Habeas relief does not lie for mere errors of state law); McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 73 (2d Cir. 2011). Petitioner did not cite to any federal cases, rely on state cases applying a constitutional analysis, or do anything that would otherwise suggest to an appellate court that his evidentiary claims were federal in nature. As such, each of Petitioner's six evidentiary claims are unexhausted. Claim ten, however, was not included in the application for appeal to the Court of Appeals. Accordingly, claim ten is not only unexhausted but also waived. See Grey, 933 F.2d at 120.

Petitioner's fifth claim, that the Government did not establish all of the

elements of count one, was not presented in constitutional terms on direct appeal or in Petitioner's application for leave to appeal to the Court of Appeals. (Dkt. No. 6-12 & 6-15). Petitioner argued that the victim gave testimony too inconsistent to be reliable in establishing whether or when two or more acts of abuse took place. Apparently, Petitioner takes issue with the jury finding the victim credible despite the victim's inability to name the exact dates when abuse occurred. But habeas review is not a second bite at the apple for trying facts. Petitioner's argument merely presents a disagreement with the jury's finding, not a constitutional question. As such, that claim is also unexhausted.

Petitioner's sixth claim, that the conviction was against the weight of the evidence, was not presented on direct appeal in federal constitutional terms. Throughout the portion of Petitioner's direct appeal brief devoted to this claim, Petitioner only asserts that the evidence was "grossly inconsistent." Separately, this claim was not included in Petitioner's application for leave to appeal to the New York Court of Appeals. As such, Petitioner's claim is not only unexhausted but also waived. See Grey, 933 F.2d at 120.

Petitioner's seventh claim, that count one of the indictment was duplicitous, was presented in federal constitutional terms on direct appeal and in Petitioner's application for leave to appeal to the Court of Appeals. "[A] Violation of CPL 200.00(1) is [a] violation of Due Process and grounds for mistrial." (Dkt. No. 6-12 at 55; Dkt. No. 6-15 at 19) (citing People v. Keindl, 68 NY2d 410, 418 (1986)).

P-049

Petitioner explicitly invoked the constitutional right of Due Process. As such, Petitioner's seventh claim was exhausted.

Petitioner's eleventh claim, that each of the aforementioned errors became harmful in the aggregate, was presented in federal constitutional terms on direct appeal and in Petitioner's application for leave to appeal to the Court of Appeals. This claim focused on a defendant's right to a "fair trial." Respondent argues that such a general statement is not enough to alert a state court to the federal nature of the claim. The undersigned disagrees. Even if such a statement was not enough to alert a state court to the claim's federal nature, Petitioner cited to state cases conducting a constitutional analysis, which in itself is enough to alert a state court to the claim's federal nature. See People v. Pelow, 24 N.Y.2d 161, 166, (1969) (conducting constitutional analysis); see also Daye, 696 F.2d at 194 (holding that state cases applying constitutional analysis is enough to alert courts to federal nature of claim). As such, Petitioner's eleventh claim was exhausted.

Petitioner's twelfth and final claim, that his sentence was excessive, was not presented in federal constitutional terms on direct appeal or in his application for leave to appeal to the Court of Appeals. Petitioner seems to argue that the sentence was harsh given his relative lack of criminal history. But Petitioner did not claim any constitutional right was at issue and he did not cite to federal cases or rely on state cases that applied a constitutional analysis. In fact, Petitioner did not cite to any case on this issue in either appellate brief. As such, Petitioner's twelfth claim is

14

unexhausted.

### 3.    <u>Procedural Bar – Independent and Adequate State Grounds</u>

Federal courts conducting habeas corpus review may not consider the merits of federal constitutional claims when a state court has already found those claims to be procedurally barred by "a state law ground that is *independent* of the federal question and *adequate* to support the judgment." <u>Coleman</u>, 501 U.S. at 729 (emphasis added). A procedural rule is adequate to support the judgment when the rule is firmly established in the law of the state at issue and regularly followed. <u>See</u> <u>Walker v. Martin</u>, 562 U.S. 307, 316 (2011).

Exceptions to this procedural default may arise if the petitioner can make a showing of cause for the default and resulting prejudice, <u>see</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977), "a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted," <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002), or the state procedural rule was "applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." <u>Romanes v. Sec'y, Dep't of Corr.</u>, 621 F. Supp. 2d 1249, 1255 (M.D. Fla. 2008).

Where a state claim is unexhausted and the petitioner no longer has a state forum in which to raise the claim, the claim may be deemed exhausted but procedurally barred. <u>See</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828-29 (2d Cir. 1994). In

P-049

New York, if a claim could have been raised on direct appeal but was not raised, it is barred. N.Y. Crim. Proc. Law § 440.10(2)(c).

Following the above discussion of exhaustion, only ten of Petitioner's claims remain.[3] Of the ten remaining claims, seven are unexhausted and three are exhausted. The undersigned will address the unexhausted claims first.

Petitioner's five remaining evidentiary claims were not exhausted. Neither were Petitioner's fifth and twelfth claims. However, Petitioner does not have the option to return to New York's state courts to assert these claims since he failed to raise them in his direct appeal in a way that would alert the court to their constitutional nature. See N.Y. Crim. Proc. Law § 440.10(2)(c). Section 440.10(2) waives claims that were not raised on direct appeal. Id. This procedural rule is firmly established in the law of New York and has been regularly followed for years. See, e.g., People v. Garcia, 399 N.Y.S.2d 117, 118 (1st Dep't 1977); People v. Campbell, No. 2014-05078, 2017 WL 902390, at *1 (2d Dep't Mar. 8, 2017).

Petitioner has not shown a cause for failing to properly assert these seven claims. See Wainwright, 433 U.S. at 87. Neither has he established (or even asserted) actual innocence or an arbitrary or unprecedented application of § 440.10(2)(c). See Dunham, 313 F.3d at 730; see also Romanes, 621 F. Supp. 2d at 1255. Had Petitioner's appellate counsel properly asserted the evidentiary claims as

---

[3] Claims six and ten were both waived since Petitioner did not include those claims in his application for leave to appeal to the Court of Appeals. See Grey, 933 F.2d at 120.

P-049

constituting some constitutional wrong, the record suggests some of those claims may have had some merit. As it stands, independent of any federal question, all seven claims are deemed exhausted but procedurally barred.

The undersigned will now move on to the exhausted claims.

The Second Department found that Petitioner's first claim, regarding the dismissal of a juror, was unpreserved for appellate review under CPL 470.05(2) because Petitioner "neither informed the court that its questioning was insufficient or objectionable, nor suggested additional avenues of inquiry or requested that other jurors be questioned." People v. Johnson, 83 A.D.3d 1094, 1095, 922 N.Y.S.2d 455 (2d Dep't 2011). The procedural rule at issue requires a movant to protest in the trial court at a time when "the court had an opportunity of effectively changing the same." NY CPL § 470.05(2). Such protest must be sufficient to make the objecting party's position known to the court and may be express or implied. Id.

In this Court's review of the record, it is a close call as to whether Petitioner protested sufficiently. (See Trial Court Transcript ("Tr.") at 1867, 1871-1872). First, Petitioner argued that the even if the court accepted what Juror #9 said about Juror #3 as true, it does not mean Juror #3 was untruthful during voir dire since it was unclear if Juror #3 was accused of a crime. (Tr. at 1867). Following the court's questioning of Juror #3, Petitioner again argued that since Juror #3 denied all of the allegations against her by Juror #9, there was "absolutely no basis to discharge this juror." (Tr. at 1870). The trial judge stated that even though Juror #3 may not have

been charged with a crime, she should have disclosed during vior dire that she was accused of abuse in her role as a teacher. (Tr. at 1871). Furthermore, according to the court, Juror #9 had no reason to make up the allegations about Juror #3. (Tr. at 1871). Petitioner again tried to intervene arguing that there was no reason to give credibility to one juror over another. (Tr. at 1871).

Petitioner never suggested that the court ask more questions or question other jurors. Nor did he inform the court that its inquiry was insufficient or objectionable. But Petitioner now argues that the court erred by failing to conduct a more searching inquiry.

The Second Department did not think the Petitioner did enough to suggest to the trial court that its *inquiry* was the problem – a reasonable opinion in light of the record. No matter this Court's opinion of whether Petitioner did enough, federal courts hearing habeas cases are not permitted to substitute their own interpretation of a state procedural rule for a state court's interpretation where the state court's interpretation was not arbitrary, unprecedented, or manifestly unfair. See Romanes, 621 F. Supp. 2d at 1255. It is enough that the Second Department's opinion was not an "arbitrary" unprecedented, or manifestly unfair application of NY CPL § 470.05(2). See People v. Hicks, 6 N.Y.3d 737, 739 (2005) (holding that a defendant must inform court that its questioning is the issue or suggest further inquiry); People v. Parrilla, 27 N.Y.3d 400, 405 (2016).

Petitioner has offered no cause for his failure to suggest a more thorough

inquiry. Neither has he established (or even asserted) actual innocence. Moreover, the procedural rule at issue is firmly established and regularly used in New York. See e.g., Parrilla, 27 N.Y.3d at 405; People v. Hodge, No. 118, 2017 WL 538547, at *1 (N.Y. App. Div. Feb. 10, 2017).

Had Petitioner's trial counsel simply suggested to the court that it conduct a further inquiry, the record suggests that this may have been a meritorious claim. But since Petitioner defaulted on this claim by failing to raise it before the trial court dismissed the juror, this claim is now, as the Second Department held, procedurally barred. That same procedural bar now prevents this Court from reviewing this claim on the merits.

The seventh claim, that count one of the indictment was duplicitous, was exhausted, but the Second Department deemed it unpreserved for review since Petitioner did not file a motion to dismiss that count within 45 days of his arraignment. See N.Y. Crim. Proc. Law §§ 470.05(2) & 210.20(1). Again, Petitioner has not shown any cause for this default. See Wainwright, 433 U.S. at 87. Neither has he established (or even asserted) actual innocence or an arbitrary or unprecedented application of the procedural rules at issue. See Dunham, 313 F.3d at 730; see also Romanes, 621 F. Supp. 2d at 1255. Sections 470.05(2) and 210.20(1) are firmly established in the law of New York and regularly followed. See Garvey v. Duncan, 485 F.3d 709, 715-16 (2d Cir. 2007); see also Glen v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996). Therefore, independent of any federal question,

P-049

Petitioner's seventh claim is also procedurally barred.

Petitioner's eleventh claim, that the trial court's errors are harmful in the aggregate, was exhausted. This claim was reviewed on the merits by the Second Department although it was deemed "without merit." Therefore, no procedural bars currently prevent this court from reviewing this claim.

Accounting for waived claims and procedurally barred claims, only claim eleven is preserved for habeas review.

B.     Standard of Review

Under 28 U.S.C. § 2254, as amended by AEDPA, an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the ground that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362,

P-049

412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different from that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule, but unreasonably applies it to the facts of the petitioner's case. Id. at 412-13. In order to establish that a state court decision is based on an "unreasonable application" of the law, the state court decision must be "more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

C.    Cumulative effect of errors became harmful in the aggregate

Petitioner's eleventh claim, the only among his claims preserved for habeas review, asserts that Petitioner was deprived of a constitutionally fair trial because the cumulative effect of the many trial court errors became harmful when taken together. (See Dkt. No. 1 at 10).    This claim was properly exhausted and is not otherwise procedurally barred.

1.    Established Federal Law

A habeas petitioner is entitled to relief if the constitutional error at trial was

not harmless. <u>Brown v. Keane</u>, 355 F.3d 82, 91 (2d Cir. 2004). An error is only harmless if, beyond a reasonable doubt, the error did not contribute to the verdict. <u>See</u> <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Zappula v. New York</u>, 391 F.3d 462, 467 (2d Cir. 2004). In reviewing a state court's determination of harmless error, district courts can only reverse objectively unreasonable determinations. <u>See</u> <u>Mitchell, 540 U.S. at 18</u>.

### 2. State Court Holdings

The only error that the Second Department recognized was Claim Ten.[4] But the court found that error harmless since the Government had shown overwhelming evidence of Petitioner's guilt. The Second Department held that there was "no significant probability that the error contributed to [Petitioner's] conviction." <u>Johnson</u>, 83 A.D.3d at 1095. Finding no other errors existed, the Second Department summarily dismissed Claim Eleven as "without merit." <u>Id</u>.

### 3. Analysis

Claim Eleven was the only claim preserved for review by this Court. There are therefore no errors for this Court to review for a cumulative effect. Petitioner's claim therefore fails without any further analysis. Habeas relief is denied.

---

[4] Claim ten is procedurally barred from consideration on the merits as explained above supra section III, A, 3.

22

## Conclusion

For the foregoing reasons, this Court DENIES Petitioner's petition.

SO ORDERED.

/S/ USDJ STERLING JOHNSON, JR.

Dated: March 21, 2017
      Brooklyn, NY

Sterling Johnson, Jr., U.S.D.J.

P-049